**In re INDEPENDENT ENERGY HOLDINGS PLC SECURITIES LITIGATION**

No. 00 Civ. 6689(SAS).

United States District Court, S.D. New York.

Dec. 17, 2003.

Jeffrey A. Klafter, Klafter & Olsen, LLP, White Plains, New York, Gerald H. Silk, Victoria Wilheim, Bernstein Litowitz Berger & Grossman LLP, New York, New York, for Lead Plaintiffs.

I. Stephen Rabin, Rabin, Murray & Frank, New York, New York, for Plaintiff Carlton Leonard.

Lawrence Portnoy, Helen Harris, Davis Polk & Wardwell, New York, New York, for Underwriter and Related Defendants.

Steven R. Schindler, Schindler Cohen & Hochman, New York, New York, for Individual Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

The law firm of Rabin, Murray & Frank LLP ("Rabin Murray") filed a complaint on behalf of plaintiff Carlton Leonard, among others, before Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz") was designated Lead Counsel in the above-captioned class action. Rabin Murray now seeks attorneys' fees and expenses in the amount of $267,085.[1] Bernstein Litowitz opposes this request on the

---

1. Although Rabin Murray claims that it is seeking attorneys' fees based on the percentage of the benefit approach, it also claims that its fee request is reasonable under the lodestar method. The lodestar method is more appropriate here given Rabin Murray's limited role in this litigation. *See Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 47 (2d Cir.2000) (stating that either the lodestar method or percentage of the benefit approach can be used in determining attorneys' fees under the common fund doctrine). Under the lodestar method, the district court "scrutinizes the fee petition to ascertain the number of hours reasonably billed and then multiplies that figure by an appropriate hourly rate." *Id.* (citing *Savoie v. Merchants Bank,* 166 F.3d 456, 460 (2d Cir.1999)).

ground that none of the work performed by Rabin Murray benefitted the class. Rabin Murray also claims that the settlement process was flawed and should be set aside, and that new and corrected notices should be sent to class members.[2] For the following reasons, Rabin Murray is entitled to a modest fee award as some of the work it performed conferred a limited benefit to the class. However, because the Court-approved Notice of Settlement satisfied the statutory requirements of the Private Securities Litigation Reform Act ("PSLRA") and the requirements of due process, there is no need for a second mailing of new notices.

## II. DISCUSSION

### A. Attorneys' Fees

 When granting fee awards, district courts are given broad discretion in determining what is reasonable under the circumstances. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir.1997) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). *See also Community Television Sys., Inc. v. Caruso,* 284 F.3d 430, 437 (2d Cir.2002) ("Our review of an award of attorneys' fees is highly deferential to the district court; we will reverse on appeal only for an abuse of discretion.") (internal quotation marks and citation omitted). Counsel who are not designated as lead counsel are entitled to some compensation where they have conferred a benefit upon the class. *See Gottlieb v. Barry,* 43 F.3d 474, 489 (10th Cir.1994) ("[W]e fail to see why the work of counsel later designated as class counsel should be fully compensated, while the work of counsel who were not later desig-

nated class counsel ... should be wholly uncompensated.").

Although Rabin Murray was not lead counsel, it seeks reimbursement for fees incurred both prior to and after the appointment of lead counsel. Those fees incurred after the appointment of lead counsel on December 20, 2000 are noncompensable. *See In re Auction Houses Antitrust Litig.,* No. 00 Civ. 648, 2001 WL 210697, at *4 (S.D.N.Y. Feb. 26, 2001) ("Nor is there any reason for the class as a whole to compensate ... lawyers for individual class members for keeping abreast of the case on behalf of their individual clients, keeping their individual clients informed, or duplicating the efforts of Lead Counsel. If individual class members wished to have the services of individual counsel in addition to class counsel, they should bear the expense themselves."). It is also inappropriate to award fees for time spent in connection with the lead plaintiff motion. *See id.* ("A number of the applicants seek compensation for the preparation of bids for the position of lead counsel. With due respect, that was an entrepreneurial undertaking by those counsel for which no compensation will be awarded.").

To determine the extent of the benefit conferred upon the class by the efforts of Rabin Murray, this Court must analyze the work it performed prior to December 20, 2000. This analysis, in turn, involves a comparison of the class action complaint filed on September 6, 2000, by Bernstein Litowitz on behalf of plaintiff Richard Miller (Case No. 00 Civ. 6689) (the "Miller Complaint") and the class action complaint filed by Rabin Murray on September 21, 2000, on behalf of plaintiff Carlton Leon-

---

2. This argument was first raised in Rabin Murray's reply papers. Although "it is procedurally improper to raise [an] issue for the first time in reply papers," *Mercer Tool Corp.*

*v. Friedr. Dick GmbH,* 179 F.R.D. 391, 398 (N.D.N.Y.1998), the merits of this argument will be addressed as Bernstein Litowitz was permitted to submit a Sur–Reply in response.

ard (Case No. 00 Civ. 7161) (the "Leonard Complaint"). The benefit attributable to Rabin Murray depends on the extent of the contribution made by the Leonard Complaint to the Consolidated Amended Class Action Complaint filed by Bernstein Litowitz on February 26, 2001 (the "Class Complaint").

The Miller Complaint was brought on behalf of all persons who purchased American Depository Shares ("ADSs") in Independent Energy's Secondary Offering pursuant to the Registration Statement and Prospectus declared effective by the SEC on March 28, 2000. *See* Miller Complaint ¶ 19. The Miller Complaint is based on false statements of material facts and omissions of material facts contained in that Registration Statement and Prospectus, *see id.* ¶ 38, and alleges violations of sections 11, 12(a)(2) and 15 of the Securities Act of 1933. *See id.* ¶¶ 49–61, 62–71, 72–74.

The Leonard Complaint defines the class more expansively to include all persons who bought ADSs or ordinary shares of Independent Energy during the period February 14, 2000 through September 8, 2000. *See* Leonard Complaint ¶ 1. Although the Leonard Complaint does not name the Underwriter Defendants, it does allege violations of sections 10b and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), which the Miller Complaint does not. While much of the fact section is taken verbatim from the Miller Complaint, *see e.g., id.* ¶¶ 20–26, 30, 34–35, the Leonard Complaint refers to various public statements made between February 14, 2000 and September 8, 2000, in addition to those made in the Registration Statement and Prospectus.

The eighty-nine page Class Complaint is indisputably more detailed than either the Miller or Leonard Complaints and appears to be an amalgam of the two. The Class Complaint defines the class to include those persons described in both the Miller and Leonard Complaints. *See* Class Complaint ¶ 1. The Class Complaint also alleges violations of section 10(b) and Rule 10b–5 of the Exchange Act as well as section 20(a). It is therefore reasonable to conclude that the Leonard Complaint influenced the Class Complaint by adding additional theories of liability and expanding the class. Rabin Murray is therefore entitled to be compensated for its efforts.

A review of Rabin Murray's detailed time sheets indicates that collectively 175.80 hours were spent in investigation, research and complaint drafting prior to December 20, 2000. Multiplying these hours by the various hourly rates results in a lodestar figure of $72,110 in attorneys' fees. Rabin Murray also requests reimbursement for expenses amounting to $7,513.71.[3] However, a review of the detailed expense reports submitted by Rabin Murray indicates that only $4,985.13 of these expenses were incurred prior to December 20, 2003. Accordingly, Rabin Murray is awarded a total of $77,095.13 in attorneys' fees and expenses.

### B. Notice of Settlement

■ Rabin Murray asks this Court to reconsider its approval of the settlements in this action because notice to the class was allegedly incomprehensible and violative of statutory requirements. Rabin Murray makes the following arguments in support of this request.

3. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *Miltland Raleigh–Durham v. Myers,* 840 F.Supp. 235, 239 (S.D.N.Y.1993).

### 1. Non–Compliance with PSLRA Requirements

Under the PSLRA, any proposed or final settlement agreement that is published to the class must include the following statements, along with a cover page summarizing the information contained in such statements:

(A) Statement of recovery—the amount of the settlement determined in the aggregate and on an average per share basis;

(B) Statement of potential outcome of case—amount of damages per share recoverable if plaintiffs were to prevail on every claim. If the parties are unable to agree on damages, a statement concerning the issues on which the parties disagree;

(C) Statement of attorneys' fees—statement of fees and costs to be applied for in the aggregate and on a per share basis;

(D) Identification of lawyers' representatives—the name, telephone number, and address of counsel available to answer questions; and

(E) Reasons for settlement—a brief statement explaining the reasons why the parties are proposing the settlement.

See 15 U.S.C. § 78u–4(a)(7).

Rabin Murray argues that Bernstein Litowitz only complied with the fourth requirement—identification of counsel. I disagree. The first requirement—amount of recovery—is addressed on the cover page of the Notice of Settlement, on page two under the heading "What Recovery Do The Settlements Provide," and page four under the heading "How Much Will My Payment Be." The second and third requirements are met on page two under the headings "What Might Have Happened If There Were No Settlements" and "What Payments Are The Attorneys For The Class Seeking." Attorneys' fees are also discussed under "How Will The Lawyers Be Paid" on page twelve of the Notice of Settlement. The fourth requirement, although not in dispute, is contained on the cover page of the Notice of Settlement and on page fourteen. Finally, the fifth requirement—reasons for the settlement—is addressed on the cover page which states:

> The Settlements resolve a lawsuit over whether the Individual Defendants and the Underwriter and Related Defendants violated federal securities laws as a result of their responsibility for allegedly false and misleading public statements. The Individual Defendants and the Underwriter and Related Defendants deny all allegations of wrongdoing.

The fifth requirement is also addressed on page three under the heading "Why Are There Settlements."

The cover page does not summarize all of the information contained above as the second and third requirements are addressed on the second page of the Notice of Settlement. Furthermore, the cover page does not state the amount of recovery on a per share basis. However, these minor deviations do not justify upsetting the notice procedure used here. One of the concerns Congress had in enacting the PSLRA was to ensure that class members received sufficient, comprehensible notice so they could evaluate proposed settlements intelligently. See S.Rep. No. 104–98, at 12 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 691. Accordingly, "[t]o ensure that critical information is readily ascertainable to class members, the Committee requires that such information appear in summary form on the cover page of the notice." Id. ("Perhaps most importantly, the notice must include a brief statement explaining the reason for the proposed settlement."). Thus, Congress's

concerns underlying the cover page requirement are allayed so long as the required information is readily ascertainable and understandable, whether presented on the cover page or on the following page. Although some of the information required by the PSLRA is contained on the second page, the Notice of Settlement substantially complies with the PSLRA requirements. A minor violation such as the one here cannot invalidate notice that otherwise constitutes "the best notice practicable under the circumstances." Fed.R.Civ.P. 23(c)(2). *See McNamara v. Bre–X Minerals Ltd.,* 214 F.R.D. 424, 432 (E.D.Tx.2002) (upholding notice where the cover page was actually two pages instead of one).

### 2. Incomprehensibility

■ Rabin Murray objects to that portion of the Notice of Settlement containing a detailed description of the Plan of Allocation. *See* Memorandum of Law in Further Support of Rabin, Murray & Frank LLP's Motion for Attorneys' Fees and Reimbursement of Expenses and Reconsideration of the Court's September 29, 2003 ("Reply Mem.") Order at 3 (noting that seven pages of the Notice of Settlement "are devoted to mind-numbing enumerations of an abstruse allocation formula").

Lead Counsel appeared before this Court on June 4, 2003, for preliminary approval of the settlements and the form for dissemination of the notice of the settlements to the class. At that conference, Lead Counsel was instructed to revise the Notice of Settlement to conform with the plain language format suggested by the Federal Judicial Center's form notices for securities class actions. After a second hearing held on June 12, 2003, this Court granted preliminary approval of the form and content of the Notice of Settlement and the Summary Notice, as well as the manner in which notice would be disseminated to class members.

The "incomprehensible" portion of the Notice of Settlement to which Rabin Murray objects is the result of a Plan of Allocation which allocates two settlement funds between purchasers of Independent Energy's Secondary Offering and those who purchased on the open market. The resulting complexity is a necessary by-product of that plan. This Court also notes that the class to which the Notice of Settlement was sent consists of relatively sophisticated investors. Rabin Murray's objection is overruled and its offer to clarify the notice is declined.

### 3. Defective Mailing Procedures

Rabin Murray suggests that either the confusing, statutorily-deficient notice or a breakdown in the mailing process resulted in a substantial number of class members not filing claims. Rabin Murray claims that 70 of its approximately 110 of its clients have not filed claims, but does not support this assertion with any documentation. On the other hand, Bernstein Litowitz claims that "[v]irtually all of Rabin Murray's clients (including Mr. Leonard) have submitted proof of claims in response to the Notice." Lead Plaintiffs' Memorandum of Law in Opposition to Rabin, Murray & Frank LLP's Motion for Attorneys' Fees and Reimbursements of Expenses and Reconsideration of the Court's September 29, 2003 Order ("Opp.Mem.") at 6, n. 7.

In further support of its mailing procedures, Bernstein Litowitz notes that 30,507 Notice Packets containing the Notice of Settlement, Proof of Claim and Summary Notice were mailed to all reasonably identifiable persons who purchased Independent Energy ADSs or ordinary shares during the class periods. *See* Affidavit of Shandarese Garr, Vice President of The

Garden City Group, Inc., the claims administrator retained to handle the mailings. Such persons were identified by Independent Energy's transfer agent, brokerage firms, banks, institutions and other nominees. *See id.* ¶ 2. Furthermore, the Summary Notice was also published in the national edition of the *New York Times* on June 27, 2003. *See id.* ¶ 6.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court stated that due process is met through "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Furthermore, notice is to be sent to "all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected. *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir.1988) (1989) ("[t]he proper inquiry is whether [class counsel] acted reasonably in selecting means likely to inform persons affected, not whether each [class member] actually received notice").

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y.1996). Here, the claims administrator made reasonably sufficient efforts in notifying the vast majority of potential class members. Thus, due process was satisfied and this objection is dismissed.

### 4. Failure to Notify Non–Designated Counsel of Settlement

■ Without any supporting case law or statute, Rabin Murray claims that Lead Counsel was obligated to notify it of the dates by which objections to the settlement and proofs of claim could be filed. Rabin Murray claims that it was unaware of these dates and only discovered the existence of the settlements after those dates had passed. Rabin Murray argues that Bernstein Litowitz's failure to inform it of these dates "irrevocably taints the entire settlement process." Reply Mem. at 4. This Court is unaware of any rule requiring lead counsel to notify non-designated counsel of any such dates. Once lead counsel is appointed, its obligations run to the class and the class alone. If counsel other than lead counsel wants to keep abreast of the litigation, it must do so through its own efforts.

Furthermore, the extensive notice procedures employed by Bernstein Litowitz were designed to provide all members of the class, including Rabin Murray's clients, with the opportunity to appear at the settlement hearing held on September 3, 2003. At oral argument, Bernstein Litowitz verified that nineteen out of twenty class members it identified as Rabin Murray clients received the notice package sent by the claims administrator. Apparently, none of these clients chose to inform Rabin Murray of the settlement hearing. Nor did Rabin Murray adequately track the case docket for this action. If Rabin Murray had done so, it would have learned that on June 12, 2003, this Court issued an Order, docketed the next day, Preliminarily Approving the Settlements, Plan of Allocation, Scheduling Hearing and Providing Notice. Finally, Rabin Murray itself was not prejudiced by its purported lack of knowledge given the instant fee request and award.

### 5. Secretive Notice of the Action

Rabin Murray claims that the customary method for providing notice of the filing of

a securities class action is to use the *Business Wire*. Instead, Bernstein Litowitz published notice in the *Investor's Business Daily* "with the obvious intention of attracting the least attention legally possible so as to eliminate competition for the office of Lead Counsel." Reply Mem at 4–5. This is a rather disingenuous argument given that I. Stephen Rabin himself used the *Investors Business Daily* in a case in which his then current law firm, Rabin & Peckel LLP, was appointed lead counsel. *See Seamans v. Aid Auto Stores, Inc.*, No. 98–CV–7395, 2000 WL 33769023, at *4 (E.D.N.Y. Feb.15, 2000) (finding notice published in the *Investors Business Daily* to satisfy the statutory requirement that notice to the class be published "in a widely-circulated national business oriented publication") (internal quotation marks and citation omitted). The phrase "what's good for the goose is good for the gander" comes to mind and based on its rationale, Rabin Murray's objection is summarily dismissed.

## III. CONCLUSION

For the foregoing reasons, Rabin Murray is awarded a total of $77,095.13 in attorneys' fees and expenses. However, its request that this Court reconsider its approval of the settlements because of various inadequacies regarding notice is denied.