**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re VERITAS SOFTWARE
CORPORATION SECURITIES
LITIGATION.

---

RICHARD J. PETRONE, on behalf of
himself and others similarly
situated, UNITED FOOD AND
COMMERCIAL WORKERS UNION
LOCAL 880-RETAIL FOOD
EMPLOYEES JOINT PENSION FUND,
CONSTRUCTION INDUSTRY AND
CARPENTERS JOINT PENSION
TRUST FOR SOUTHERN NEVADA,
HAWAII ELECTRICIANS PENSION
FUND, and HAWAII ELECTRICIANS
ANNUITY FUND,
    *Plaintiffs-Appellees,*

    v.

VERITAS SOFTWARE CORPORATION,
GARY L. BLOOM, KENNETH E.
LONCHAR, PAUL A. SALLABERRY,
and MARK LESLIE,
    *Defendants,*

    v.

MICHAEL MALONE,
    *Movant-Appellant.*

Nos. 05-17393
06-15435

D.C. No.
CV-03-0283 MMC

OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine Chesney, District Judge, Presiding

9023

Argued and Submitted
May 17, 2007—San Francisco, California

Filed July 25, 2007

Before: Diarmuid F. O'Scannlain and Sandra S. Ikuta,
Circuit Judges, and Leonard B. Sand,* Senior District Judge.

Opinion by Judge Sand

---

*The Honorable Leonard B. Sand, Senior United States District Judge
for the Southern District of New York, sitting by designation.

**COUNSEL**

I. Stephen Rabin, Rabin & Peckel LLP, New York, New York, for the movant-appellant.

Patrick J. Coughlin, Sanford Svetcov, Susan K. Alexander, Jeffrey W. Lawrence, and Maria V. Morris, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, California, for the plaintiffs-appellees.

## OPINION

SAND, Senior District Judge:

This case requires the Court to interpret the notice requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4 (2000), when a securities class action is to be settled. Appellant, a member of the class of securities holders, appeals from an order of the district court approving a settlement and plan of allocation, arguing that the notice of proposed settlement sent to the class was inadequate under the PSLRA and raising several substantive objections to the plan of allocation. Appellant also appeals from the district court's order denying his application for attorneys' fees. Because we find that the notice did not comply with the requirements of the PSLRA, we vacate in part and remand. Because the application was untimely, we affirm the denial of attorneys' fees for work performed prior to the fee application.

## FACTS AND PRIOR PROCEEDINGS

### The Underlying Case

This case stems from the settlement of a class action on behalf of all persons or entities who purchased publicly traded securities of VERITAS Software Corporation between January 3, 2001 and January 16, 2003. The complaint alleges that VERITAS falsely represented that it had entered a $50 million deal with AOL, structured to appear as if VERITAS had sold $50 million in software and services to AOL and had purchased $20 million in online advertising from AOL. This "roundtrip" transaction allowed both companies to artificially inflate their revenues and earnings.

On November 14, 2002, VERITAS for the first time revealed in a Form 10-Q that it had been served with a subpoena by the Securities Exchange Commission three months

earlier requesting documents related to the transaction with AOL. The company also stated that it was reviewing its accounting treatment of the transaction.

On January 17, 2003, VERITAS restated its financials for fiscal years 2000 and 2001 to eliminate the improper recognition of approximately $20 million in revenue from the AOL transaction.

Plaintiffs allege that because of the company's false representations, the price of VERITAS securities was artificially inflated and all who purchased securities at the inflated price during the class period were injured.

The class was certified and a group of four union pension funds were appointed lead plaintiffs with Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP as lead counsel.[1] The district court dismissed the original complaint and the first amended complaint with leave to amend for failure to allege scienter adequately. Defendants moved to dismiss the second amended complaint, but the parties agreed to settle while the motion was pending.

## The Initial Settlement

Lead plaintiffs and defendants agreed to settle the case in early 2005 for $35 million in cash. Lead plaintiffs maintain that this figure is about 20% of the maximum amount of damages they could prove at trial. In the stipulation of settlement, defendants disclaimed any responsibility for, or desire to become involved with, the allocation of the settlement proceeds. The district court preliminarily approved the settlement

---

[1]The firm Milberg, Weiss, Bershad, Hynes & Lerach, LLP, was originally appointed lead counsel. On May 1, 2004, the firm split into two firms: Milberg, Weiss, Bershad & Schulman, LLP and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP. This case went to Lerach Coughlin.

on March 18, 2005 and lead counsel sent notice of the proposed settlement to the class members in late March 2005. The notice provided that only purchasers of VERITAS common stock would be able to participate in the settlement, despite the fact that VERITAS had four other categories of publicly traded securities (5.25% Notes, 1.856% Notes, call options, and put options) that were covered by the class action. The notice represented that the "estimated average recovery per share will be approximately $0.25."

## Malone's Initial Objections and the Amended Settlement

Appellant Michael Malone, a class member, objected to the initial proposed settlement on the grounds that it unfairly excluded four classes of VERITAS publicly traded securities from distribution of settlement funds although they were part of the class and on the ground that the notice was inadequate because it provided too short a time to object. In response to Malone's objections, the lead plaintiffs and defendants amended the proposed settlement on May 4, 2005 to include the other four classes of securities. The amended settlement's plan of allocation provided for different distributions of settlement proceeds to holders of the different classes of securities based on the type of security and the timing of their transactions. On May 6, 2005 a revised notice was sent to the class, which also stated that the "estimated average recovery per share of common stock will be approximately $0.25."

## Malone's Additional Objections

The Court received seven objections to the revised proposed settlement out of about 494,000 class members noticed. Six of those objections were to the size of lead counsel's fee. Only Malone objected to the substance of the settlement. Malone objected to: (1) the payment of settlement proceeds to so-called "in-and-out traders"—those who bought *and sold* their securities prior to VERITAS's initial disclosure of its intent to review the accounting of the AOL transaction and

therefore could not show loss causation under the rule that the Supreme Court announced in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005); (2) the disparate treatment of options traders both in imposing a cap of 2% of the net settlement fund on the claims of options traders and precluding recovery by in-and-out options traders; and (3) a plan of allocation that Malone claimed was inconsistent with the PSLRA's method of calculating damages. After a fairness hearing where Malone raised questions about how possible damages were calculated and how the estimated average recovery of $0.25 per share was calculated, the district court ordered supplemental briefing to explain how these estimates were derived. In his supplemental papers, Malone maintained that the estimated average recovery per share if all shares filed claims would be $0.085. In reply, lead plaintiffs explained that their estimated average recovery per share of $0.25 was based on an assumption that only 43% of the class members would actually file claims (an estimate they said was supported by a NERA Economic Consulting study showing that on average about 43% of class action claimants file a claim).[2]

---

[2]At oral argument on appeal, counsel for lead plaintiff asserted that the estimated average recovery per share of $0.25 was not derived from an assumption that 43% of class members would make claims, but rather an assumption that 75-80% would make claims. This contention is nowhere in the record. Counsel explained that lead plaintiffs' expert never stated that he based his calculations on the 43% figure; he merely cited the NERA study and used the 43% figure to criticize Malone's expert's calculation. In response to lead counsel's assertion that the $0.25 per share estimate was based on 75-80% of class members making claims, Malone's counsel stated at oral argument, "This is the first time I've heard about it. It's not even in any of the briefs." In fact, despite lead plaintiffs' counsel's representation to this Court at oral argument that if 75-80% of class members participated in the $35 million settlement they would get $0.25 per share, lead plaintiff's opposition brief states: "This estimate was based on an assumption that approximately 43% of class members would file claims."

## The District Court Order Approving the Settlement

The district court approved the amended settlement and plan of allocation in an order issued on November 15, 2005. Applying the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), the court determined that the strength of the case; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement, the extent of discovery, and stage of the proceedings; and the experience and views of counsel all favored approval. The court determined that the risk of maintaining class action status throughout trial and the absence of a governmental participant were neutral. In evaluating the reaction of class members to the proposed settlement, the court noted that of the 494,000 class members, only Malone had raised substantive objections to the plan of allocation. The court then addressed and rejected each of Malone's objections:

(1) On the treatment of in-and-out traders, the district court noted that the initial settlement was reached before *Dura* was decided on April 15, 2005, and under prior Ninth Circuit law, in-and-out traders were entitled to recovery. The court held that the parties were entitled to settle the action in light of the risk that the law might change and the settlement allocation was fair and reasonable in its treatment of in-and-out traders because it provided for lower recovery for such traders than for other investors in light of the uncertainty as to whether they could prove damages.

(2) On the disparate treatment of options traders, the district court found that the 2% cap on total options recovery was fair and reasonable. The court noted the cost and difficulty of calculating options damages and that the 2% cap was roughly proportional to the total volume of options traded relative to the volume of stock traded. The court also held that the decision not to allocate settlement funds to in-and-out options traders (while at the same time allocating funds to in-and-out traders of all other classes of securities) was reasonable

because of the cost and difficulty of calculating economic losses for options and the small amount of damages suffered by in-and-out options traders.

(3) On the applicability of the PSLRA's method of calculating damages, the district court held that distribution of settlement funds based on the price of the security calculated on the day of the disclosure instead of calculated according to the PSLRA's "90-day bounce back rule"[3] was fair and reasonable even though it would result in payments to some class members who could not have recovered at trial. The court reasoned that the PSLRA rule does not, on its face, apply to settlements and there was no showing that failure to apply the rule resulted in significant numbers of class members being over-compensated to the detriment of the remainder of the class.

The district court did not address the adequacy of the revised notice of proposed settlement or the basis of the calculations of estimated average per share recovery it contained. The court approved the settlement and plan of allocation, awarded lead counsel attorneys' fees of $6 million (reduced from the $8.1 million they were seeking) plus costs, and entered judgment on November 15, 2005.

---

[3]The PSLRA, 15 U.S.C. § 78u-4(e)(1), limits the amount of damages that plaintiffs can recover at trial to the difference between the purchase price and the average trading price during the 90-day period following the corrective disclosure. This "90-day bounce back rule" (as the parties refer to it) limits the plaintiffs to rescissory damages and does not calculate damages based on the single day decline in price, but instead allows the security an opportunity to recover. Calculation of damages is slightly more complicated if plaintiffs sell the security within 90 days; damages are capped at the average trading price between the disclosure date and the sale date. 15 U.S.C. § 78u-4(e)(2). Malone argues that the failure to apply the rule unfairly distributes settlement funds to some class members who would not have been able to recover at trial because they purchased their shares at a lower price than the 90-day average, but a higher price than the price on the day after disclosure.

**Malone's Fee Application**

On December 14, 2005, twenty-nine days after judgment was entered, Malone's counsel made an application for an award of attorneys' fees of $780,000 and expenses of $19,087.50. The district court denied the application as fifteen days too late under Rule 54 of the Federal Rules of Civil Procedure and found that Malone's misinterpretation of the court's order retaining jurisdiction over fee applications as extending the fourteen day filing deadline did not constitute excusable neglect.

The district court also held that even if the fee application had been timely, Malone's counsel would only be entitled to fees for work connected with his initial objection. Although the initial objection conferred a substantial benefit on the class, the fee award would be modest in light of the minimal number of hours counsel spent preparing the objection. The court stated that Malone's counsel would not be entitled to fees for work connected with the second set of objections because they were denied and conferred no benefit on the class. The court did not determine the precise amount of fees to which Malone's counsel would have been entitled had his application been timely filed.

\* \* \*

This appeal followed. Lead counsel has already been paid pursuant to the terms of the settlement agreement, but the proceeds of the settlement have not been distributed to the class members and are sitting in escrow pending resolution of this appeal.

## DISCUSSION

On appeal, Malone raises five issues. First, he argues that the settlement notice was inadequate because it failed to comply with the requirements of the PSLRA. Second, Malone

argues that, in light of *Dura*, the district court erred by allowing in-and-out traders to participate in the settlement proceeds. Third, Malone argues that the district court should have applied the method of calculating damages in the 90-day bounce back provision of the PSLRA when allocating settlement proceeds. Fourth, Malone argues that the district court's disparate treatment of options traders—capping their recovery at 2% of the net settlement fund and not allowing in-and-out options traders to recover—was an abuse of discretion. Finally, Malone argues that the district court abused its discretion in denying his counsel's fee application because it was filed fifteen days late.

This Court reviews a district court's approval of an allocation plan in a class action settlement for abuse of discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000). Any necessary legal questions are reviewed de novo. *In re The Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000). A district court's decision to deny attorneys' fees is also reviewed for abuse of discretion. *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1133 (9th Cir. 2002).

Because the adequacy of the notice is antecedent to the merits of the settlement, we consider the notice issue first. *See, e.g.*, *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003) ("A decision that notice is appropriate is required before any inquiry is made into the merits of the settlement itself.").

**Adequacy of the Revised Notice of Proposed Settlement**

Malone argues that the revised notice of proposed settlement was inadequate because it failed to meet the PSLRA requirement that it provide a calculation of the amount of settlement proposed to be distributed on a per share basis. Malone argues that the notice was misleading because it calculated the estimated average recovery per share of common

stock at $0.25 based on an undisclosed assumption that only 43% of class members would file a claim.

[1] As a threshold matter, lead plaintiffs argue that this issue is not preserved for appeal because Malone never raised it before the district court. A review of the record reveals that Malone raised the issue of the adequacy of the revised notice and questioned lead plaintiffs' method of calculation on at least three occasions: (1) In his Supplemental Memorandum in Further Support of his Objections to Proposed Settlement dated July 25, 2005, Malone questioned the calculations of lead plaintiffs and asked the court to compel them to disclose the basis of those calculations; (2) at the Fairness Hearing on July 29, 2005, Malone questioned the basis of the calculations and the district court ordered further briefing on the issue; and (3) in his Memorandum in Further Objection to the Proposed Plan of Allocation dated September 27, 2005, Malone called for a revised notice because lead plaintiffs failed to set forward the basis for their calculations. Malone never raised the specific argument presented here—that the method of calculating per share recovery based on an undisclosed assumption that only 43% of the class would file claims violates the notice requirements of the PSLRA—before the district court because he never had the opportunity to do so. Lead plaintiffs did not disclose their method of calculating per share recovery until the expert declaration accompanying their reply brief dated October 14, 2005, the last submission before the district court issued its order approving the settlement and plan of allocation on November 15, 2005. The district court did not address the adequacy of notice in its order. In as much as Malone raised the issue of the adequacy of the notice at every opportunity he had, he has not waived the issue on appeal. Whether the notice complied with the requirements of the PSLRA is a question of law, so a remand to the district court is not necessary to decide that specific issue in the first instance.

[2] The PSLRA requires that every settlement notice must include a statement of plaintiff recovery: "The amount of the

settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis." 15 U.S.C. § 78u-4(a)(7)(A). The notice must also include a statement of "the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged." 15 U.S.C. § 78u-4(a)(7)(B).

[3] It is clear that the purpose of the notice requirement is to allow class members to evaluate a proposed settlement. With sufficient notice, class members can compare the recovery per share under the settlement with the potential damages per share if the class prevailed at trial and weigh the risks and rewards of proceeding to trial or participating in the proposed settlement. The Conference Committee Report notes that the PSLRA requires improved settlement notices to class members because "[c]lass members often receive insufficient notice of the terms of a proposed settlement and, thus, have no basis to evaluate the settlement." H.R. Rep. No. 104-369, at 36 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 735. Several courts have noted this purpose in dicta. *See, e.g.*, *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184 (S.D.N.Y. 2003) ("One of the concerns Congress had in enacting the PSLRA was to ensure that class members received sufficient, comprehensible notice so they could evaluate proposed settlements intelligently.").

[4] In this case, the revised notice of proposed settlement said:

> Depending on the number and type of eligible securities that participate in the settlement and when those shares were purchased and sold, the estimated average payment for common stock will be approximately $0.25 for each share before deduction of court-approved fees and expenses. The number of claimants who send in claims varies widely from case to case. If fewer than anticipated Settlement

Class Members send in a claim form, you could get more money.

The $0.25 per share estimate was not based on all class members filing claims, but rather on an undisclosed assumption that only a fraction of class members would actually file their claims. Even at this late point in the litigation (after the trial court requested supplemental briefing on the issue and after briefing and argument on appeal), what that assumption actually was remains elusive.[4] The exact assumption (whether 43% or some other percentage) that lead plaintiffs used, however, is immaterial to our conclusion here; what matters is that the assumption was undisclosed and was significantly less than 100%. According to Malone's expert, if 100% of the class members filed claims, the average recovery per share would be closer to $0.085.[5] Malone argues that the PSLRA

---

[4]Citing a NERA Economic Consulting study which found that, on average, only 43% of class members file claims, lead plaintiffs' expert asserted in his reply declaration that Malone's calculation of recovery per share, which was based on a higher estimate of the number of shares eligible for recovery and an assumption that 100% of class members would file claims, would be less reliable than the estimate that lead plaintiff's expert provided in the revised notice of proposed settlement. While lead plaintiffs' expert did not explicitly state that he based his estimate on the assumption that only 43% of class members would file claims, this was the position that lead plaintiffs took in their opposition brief before this Court. At oral argument, however, counsel for lead plaintiff stated that the $0.25 per share estimate in the revised proposed notice was based on an assumption that 75-80% of class members would file claims—a contention that is nowhere in the record. *See supra* note 2.

[5]Malone's expert and lead plaintiffs' expert differ in their calculations of recovery per share in more ways than just the assumption of how many class members will file claims. For example, lead plaintiff's expert asserts that Malone's expert inflated the number of shares that were damaged and therefore eligible for recovery. But both experts acknowledge that the assumed percentage of class members who will file claims is a major factor in the calculation. Using lead plaintiffs' other calculations, but assuming that all class members file claims, Malone estimates that average recovery per share would be slightly less than $0.11. Using Malone's other calculations, but assuming only 43% of class members make claims, lead plaintiffs estimate that average recovery per share would be about $0.20.

requires that the average per share recovery be calculated based on a distribution to *all* class members. Lead plaintiffs defend their estimate as one based on a real world assumption supported by academic literature. They argue that their "more realistic estimate" satisfies the notice requirements of the PSLRA. The parties cite no cases interpreting the notice requirements of the PSLRA. The cases that Malone cites, *In re Charter Communications, Inc. Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *23 (E.D. Mo. June 30, 2005) and *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 450 (S.D.N.Y. 2004), merely note, in dicta, that notices providing estimated recovery per share based on every class member filing a claim are consistent with the requirements of the PSLRA. Interpretation of the notice requirements of the PSLRA appears to be a question of first instance in this and all other circuits.

**[5]** The PSLRA's purpose of allowing class members to evaluate a proposed settlement would be frustrated if lead plaintiffs could apply undisclosed assumptions to their estimated average recovery per share. Malone's interpretation that "the amount of settlement *proposed to be distributed to the parties to the action*," 15 U.S.C. § 78u-4(a)(7)(A) (emphasis added), means *all* of the parties to the action, not some estimated portion of the parties who are likely to file claims, is more consistent with the text and the purpose of the statute. When § 78u-4(a)(7)(A) is read in conjunction with the rest of § 78u-4(a)(7), which refers to "the average amount of damages per share that would be *recoverable* if the plaintiffs prevailed on each claim alleged," it appears that Congress was referring to the amount that each class member would be *entitled* to—an amount that can only make sense if it is based on all of the shares in the class.

**[6]** The best reading of the PSLRA notice requirements is that the estimated average recovery per share must be based on all of the shares in the class. This interpretation has the salutary effect of ensuring uniformity. It is clear that the PSLRA

notice requirements are not satisfied if the per share estimates are based on undisclosed assumptions that fewer than 100% of class members will make claims. But nothing in this holding should preclude proponents of a settlement from *also* including estimated average per share recovery based on explicitly disclosed projections of how many class members are likely to file claims. We need not now decide whether notices in class action settlements heretofore filed, which contain an explicit statement that the estimated average recovery per share is based on a specific disclosed estimate of the percentage of class members likely to file claims, violate the PSLRA notice requirements.

**[7]** The notice in this case clearly did not satisfy the requirements of the PSLRA. Not only did it fail to disclose that the per share recovery calculations were based on an assumption that only a fraction of class members would file claims, the notice was misleading. It implied that the calculations were based on 100% of the class filing claims. The notice said that recovery could be greater if fewer than expected class members filed claims, saying in no uncertain terms "you could get more money," but gave no indication of the possibility that recovery could be less if more class members than expected filed claims. In the absence of any disclosure to the contrary, a reasonable class member would conclude that the per share estimates were based on all of the class members filing claims.

While it is not integral to our interpretation of the PSLRA's notice requirements, we note that lead plaintiffs' obfuscation was not limited to the misleading wording of the notice. Lead plaintiffs affirmatively misrepresented to the district court that the per share recovery calculations were based on 100% of the class filing claims. At a hearing before preliminary approval of the proposed settlement, counsel for lead plaintiffs explained to the court that the first notice[6] provided that "you

---

[6]The notice addressed at this preliminary hearing was eventually superceded after Malone's initial objections and a revised notice of proposed

are going to get 25 cents for each share that you make a claim for *if everybody makes a claim*."[7] The statement was obviously not accurate and it may have contributed to the district court's decision to approve a notice that did not comply with the requirements of the PSLRA.

[8] The absence of adequate notice injects a fatal flaw into the entire settlement process and undermines the district court's analysis of the fairness of the settlement under the *Hanlon* factors. While the district court has substantial discretion in approving the details of a class action settlement, it may not do so without giving class members an adequate opportunity to object. In this case, where the notice was inadequate and overstated the likely recovery per share, it may have discouraged other objectors from speaking up. The fact that there was only one objector to the substantive terms of the settlement—a fact that the district court made much of— carries little weight in light of the inadequacy of the notice. Because the revised notice of proposed settlement was inade-

---

settlement was sent to the class. The notice at issue on this appeal is the revised notice of proposed settlement, but the wording of the two notices with regard to average recovery per share is, in all material respects, identical and lead plaintiffs did nothing, either before or after the issuance of the revised notice, to correct their earlier misrepresentation to the district court that the $0.25 per share estimate was based on "everybody" making a claim.

[7]At oral argument before this Court, counsel for lead plaintiffs asserted that this was merely a misstatement by class counsel at a preliminary hearing where no class members were present. We fail to see how the absence of class members lessens the impact of the misrepresentation on the judge who must decide whether to approve the notice of proposed settlement. The statement by class counsel caused the district court to observe "that sounds like a very small amount of money." In fact, it was more than twice the amount recoverable "if everybody makes a claim." Even if class counsel merely inadvertently misstated the basis for the $0.25 estimate, it only serves to highlight how misleading the notice was; the natural inference from the wording of the notice was that the estimate was based on everybody making a claim.

quate under the PSLRA, we vacate the judgment of the district court approving the settlement and plan of allocation and remand to issue a new notice to the class.

## Substantive Objections to the Plan of Allocation

Because the district court's approval of the settlement and plan of allocation must be vacated and the case remanded to issue a new notice that complies with the requirements of the PSLRA, we need not reach the issues that Malone raised in his substantive objections to the plan, *i.e.*, recovery by in-and-out traders, the applicability of the PSLRA 90-day bounce back rule to settlements, or the disparate treatment of options traders. Accordingly, we express no opinion on these issues.

## Malone's Fee Application

[9] We turn now to whether the district court abused its discretion in denying Malone's application for attorneys' fees because it was filed 15 days late. Rule 54 of the Federal Rules of Civil Procedure provides that when a party makes a claim for attorneys' fees and related nontaxable expenses, "[u]nless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment. . . ." Fed. R. Civ. P. 54(d)(2)(B). Malone made an application for attorneys' fees 29 days after the entry of judgment. Malone admits that the delay in filing his application was not due to neglect, but was a deliberate decision to postpone the fee application because of the "strange" procedural posture of the case and to avoid duplicative filings in light of his pending appeal. Failure to comply with the time limit in Rule 54 is a sufficient reason to deny a motion for fees absent some compelling showing of good cause. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 889-90 (9th Cir. 2000).

Malone makes two arguments why his fee application should not have been denied as untimely. First, he argues that the district court expressly retained jurisdiction over fee appli-

cations, thereby extending the 14-day time limit indefinitely. Second, he argues that, if the court's retention of jurisdiction did not extend the deadline, it was at least ambiguous and his good faith reliance on that interpretation made his late application the result of excusable neglect.

The district court's final judgment states:

> Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; *(c) hearing and determining applications for attorneys' fees and expenses in the Litigation*; and (d) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation.

Malone interprets the district court's reservation of jurisdiction over fee applications to mean that there was no specific deadline for filing fee applications. The district court, however, held that "there is no language even arguably extending the 14-day deadline for filing a motion for attorneys' fees."

Malone relies on *Fresh Kist Produce, L.L.C. v. Choi Corp.*, 362 F. Supp. 2d 118, 124-25 (D.D.C. 2005), where a magistrate judge held that where the district judge's order creates a specific procedure for recovering attorneys' fees and costs and sets no specific date for requesting fees, the order preempts the 14-day time limit. The district court distinguished *Fresh Kist* because its order did not create a specific procedure for fee requests.

Malone also argues that if the district court's order did not extend the 14-day time limit, then its retention of continuing jurisdiction was meaningless because it already had jurisdiction to entertain fee requests for 14-days under Rule 54. This

argument is unpersuasive. As the district court explained, it was simply providing a complete listing of the matters over which it was retaining jurisdiction, "irrespective of whether such retention was provided for elsewhere as well." Nothing in the district court's order indicated an intent to modify the default 14-day time limit provided in Rule 54. The district court did not abuse its discretion in finding that its order had not extended the deadline to apply for fees.

Second, Malone argues that because he acted in good faith reliance on his belief that the district court's "ambiguous" order extended the 14-day time limit, his untimely filing was the result of excusable neglect and should be excused under Federal Rule of Civil Procedure 6(b). To determine whether neglect is excusable, a court must consider four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The district court found that the length of delay was not great and that the lead plaintiffs had not shown that they were prejudiced, but that Malone failed on the third factor—the reason for the delay. The court found that Malone's asserted reason for the delay (set forth in a footnote in his reply brief, not a sworn declaration) that he deliberately chose to postpone the fee application because of the awkward procedural posture of the case and because he thought that the district court's order extended the deadline for fee applications, was not neglect at all and certainly not a compelling showing of good cause.

**[10]** In the end, this is a decision committed to the discretion of the district court. While the district court would not have abused its discretion in granting Malone's fee application, it did not abuse its discretion in denying it. The district court's decision denying Malone's fee application on the grounds of untimeliness is affirmed. Because the application

was untimely we need not reach the question of whether it was proper for the district court to decline consideration of the time Malone's counsel expended on unsuccessful objections. This holding is, of course, without prejudice to Malone's right to apply to the district court for fees after a new judgment is issued.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed in part and vacated and remanded in part. The approval of the settlement and plan of allocation is vacated and the case is remanded to the district court to issue a new notice that complies with the requirements of the PSLRA. The judgment of the district court denying Malone's application for attorneys' fees is affirmed with respect to services performed prior to his fee application.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART.**