**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2016*
Decided June 1, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-1904

| | |
|---|---|
| CARL GALLO, JR., <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-cv-01533 |
| DR. KUL SOOD and <br> LORNA PITCHER STOKES, <br> *Defendants-Appellees*. | Michael M. Mihm, <br> *Judge*. |

**O R D E R**

Carl Gallo, an Illinois prisoner, appeals the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that medical staff at Hill Correctional Center were deliberately indifferent in treating his ulcerative colitis (an inflammatory bowel disease affecting the lining of the colon and rectum) and lipomas (benign fatty tumors that form under the skin). At issue is whether a prison doctor and his staff

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

deliberately withheld a particular medication for colitis and disregarded a serious health risk by not surgically removing Gallo's lipomas. We affirm.

Gallo's operative complaint asserted claims against 19 defendants concerning treatment for seven different medical conditions. Among his claims were allegations that, upon arrival at Hill in May 2011, a physician's assistant, Amy John, denied him Asacol[1] to treat his colitis even though he told her that it had been prescribed for him in the past by a gastroenterologist. Gallo further alleged that he was denied this medication throughout the rest of 2011 by Dr. Kul Sood, a prison doctor, and Lorna Pitcher Stokes, a nurse, both of who continued to push alternative treatments that were ineffective. Finally, he alleged that Dr. Sood had refused to remove his numerous, painful lipomas.

The district court screened the complaint under 28 U.S.C. § 1915A and dismissed Gallo's claims against most of the 19 defendants, including John, for failure to state a claim. The court concluded that Gallo failed to state a claim against John because his allegations—that, despite putting him under 23-hour observation in response to his reported symptoms, she discontinued or would not renew previous medications—amounted to a mere difference of opinion between physician and patient over proper treatment. The court, however, allowed Gallo to proceed on his claims that (1) Dr. Sood and Pitcher Stokes were deliberately indifferent to his ulcerative colitis condition—Pitcher Stokes for refusing to schedule appointments for his repeated complaints of abdominal pain and bloody stools, and Dr. Sood for continuing with an ineffective course of treatment—and (2) Dr. Sood acted with deliberate indifference toward his lipomas by refusing to remove them surgically.

Discovery ensued, and Gallo obtained evidence of what he perceived as deliberate indifference on the part of Dr. Sood and Pitcher Stokes toward his colitis condition. In July 2011, only a couple months after arriving at Hill, Gallo refused a drug called Bentyl (a muscle-relaxing drug for the stomach and intestines used to treat colitis symptoms) that Dr. Sood had prescribed after first seeing him the previous month. Gallo said that the drug was ineffective and caused abdominal pain. Up until that point, his colitis was contained, with no "flare-ups"—which can cause stomach pain, diarrhea,

---

[1] Asacol is a medicine used to treat ulcerative colitis by reducing inflammation in the intestine. *See Mesalamine (Oral Route)*, MAYO CLINIC, http://www.mayoclinic.org/ drugs-supplements/mesalamine-oral-route/description/drg-20064708.

and bloody stools. His previous prescription for Asacol—a drug that Gallo favored—had lapsed two months before his transfer to Hill.

Gallo's colitis started to flare up toward the end of October. He saw Pitcher Stokes on the 20th and, he says, told her that he had been having bloody stools (her treatment notes, however, reflect that he complained only of heartburn, indigestion, and loose stools). He also asked to see Dr. Sood over concerns that an asthma medication that he had been prescribed, theophylline, was aggravating his colitis—a possibility, he said, that two other nurses had confirmed. But Pitcher Stokes told him that this medication could not be causing the problems he reported and refused to refer him to Dr. Sood, and she instead gave him Maalox and reduced his Metamucil prescription. At another appointment with Pitcher Stokes the following week, this time for back and neck pain, Gallo did not mention any abdominal problems.

In November, the signs of a colitis flare-up became more pronounced. On November 7, Gallo saw Dr. Sood about abdominal pains he had suffered over the past four days. Dr. Sood prescribed Bentyl for three days and then renewed theophylline for Gallo's asthma, despite Gallo's protestations that this medication aggravated his colitis. Over the following week, Gallo submitted sick-call requests complaining that he was experiencing excruciating pain in his "lower chest and back kidney area" and blood in his stool. Pitcher Stokes saw Gallo on November 17, and he told her that he had been having bloody stools for two weeks. Lab tests and a 23-hour observation were conducted over the following days and confirmed his report, and Gallo asked specifically for Asacol and a Rowasa enema.[2]

After the tests and observation confirmed the bloody stools, Dr. Sood stopped Gallo's Metamucil prescription, because of its laxative effects, and prescribed Imodium for five days. At an appointment with Gallo a few days later, on November 28, he concluded that the flare-up was mild based on the observations that he and the other staff had recorded. He prescribed antibiotics Cipro and Flagyl to address any infectious component of the flare-up and said he would see Gallo again in 30 days.

Over the following month, however, Gallo's condition did not improve. In a sick-call request on December 8 and grievance on December 19, he again asked for

---

[2] Rowasa contains the same medicine as Asacol, mesalamine, and is used to reduce inflammation of the bowels. *See Mesalamine (Rectal Route)*, MAYO CLINIC, http://www.mayoclinic.org/drugs-supplements/mesalamine-rectal-route/description/drg-20068210.

Rowasa and Asacol. When Gallo saw Dr. Sood on December 22, he reported still experiencing many bowel movements daily with abdominal pain and weakness. Dr. Sood concluded that Gallo's flare-up was acute and this time prescribed Asacol as well as Imodium.

Regarding the lipomas, Gallo testified that he has approximately 75 lipomas on his torso, legs, and arms, of which around 50 produce pain similar to that of a bruise; he reported that they are sore and painful on contact. Dr. Sood saw Gallo about his lipomas but concluded that these posed no substantial risk of serious harm and did not need to be removed. He prescribed Tylenol for pain.

The defendants moved for summary judgment, which the district court granted. Regarding Gallo's claim that Dr. Sood was deliberately indifferent to his colitis, the court explained that Gallo produced no evidence to dispute Sood's affidavit that he properly assessed Gallo's condition and prescribed a reasonable course of treatment. With regard to Gallo's assertion that he was wrongfully withheld Asacol until months after arriving at the prison, the court said that Gallo was not receiving Asacol when he left his prior prison, and "a couple of month delay in restarting this medication" did not constitute deliberate indifference. As for Gallo's claim against Pitcher Stokes, the court concluded that he put "nothing in the record, other than his own self-serving assertions" to suggest that she refused to refer him to the doctor; that she responded in untimely fashion to his complaints of abdominal pain, colitis flare-ups, or bloody stools; and that she did not revise his medication. Finally, regarding Gallo's complaints about the treatment he received for his lipomas, the court concluded that his request for surgery was merely a preference for a different course of treatment and thus not actionable under the Eighth Amendment.

On appeal Gallo challenges the district court's grant of summary judgment against his claim that Dr. Sood acted with deliberate indifference by withholding Asacol for eight months. A jury, he argues, could infer that Dr. Sood knew that Asacol was the only proper treatment for him because it had been used in the past by a gastroenterologist to successfully treat the colitis, and Dr. Sood's ongoing reliance on Bentyl as an alternative course of treatment had proven ineffective.

We sympathize with Gallo over the difficult circumstances of his condition, but agree with the district court that his claim amounts to a disagreement over treatment, which is insufficient to show deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003). Gallo apparently prefers to be treated with Asacol, but his prescription for this drug had lapsed two

months before he first saw Dr. Sood, and he presented no evidence that instructions had been left by the prescribing doctor for Gallo to be continued on this medication. This case thus is not one in which a doctor discontinued a medication prescribed by a specialist or disregarded a specialist's instructions. *Constrast Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) (doctor had referred inmate to specialist, then ignored recommendations); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (doctor disregarded letter from specialist instructing particular drug and dosage). Gallo seems to assume that Dr. Sood should have inferred or concluded from his past treatment that Asacol was the only proper treatment, but he did not present any evidence calling into question the appropriateness of the medications initially prescribed by Dr. Sood—Bentyl, Imodium, Cipro, and Flagyl—or suggesting that Dr. Sood's treatment was otherwise "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). That said, we disagree with the district court's statement that a couple months' delay in administering proper treatment cannot constitute deliberate indifference: under some circumstances, even a two-day delay may be sufficient, *see Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). But here, to repeat, we do not believe that Gallo has created a fact question regarding the treatment of his colitis.

Next, Gallo challenges the grant of summary judgment for Pitcher Stokes, arguing that her refusal on October 20 to refer him to a doctor to evaluate his reports of blood in his stool and the possible harmful side effects of his asthma medication delayed proper treatment for his flare-up until November 17.

As the district court pointed out, however, the chronology of Gallo's medical visits is more detailed. Whether or not it was appropriate for Pitcher Stokes to treat Gallo's October 20 complaint with skepticism, he has not shown that her actions that day caused a month-long delay. Gallo met with Pitcher Stokes again on October 27, and then with Dr. Sood on November 7—and both times he apparently did not mention having blood in his stool. And he acknowledges that he was able to raise his concerns about his asthma medication to Dr. Sood at the November 7 appointment. We note, however, that the district court should not have discounted his statements about Pitcher Stokes's treatment as mere "self-serving assertions"—we've said before that deposition testimony and written statements are "self-serving" by nature, and this term "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

Regarding the lipomas, Gallo disagrees with the district court's conclusion that Dr. Sood's failure to perform surgery does not constitute deliberate indifference. Gallo maintains that surgical removal is the only appropriate treatment for his condition. He also speculates that some of his masses may not be lipomas—which are harmless—but rather cancerous liposarcomas, and argues that Dr. Sood disregarded this risk. But based on the evidence in the record, a jury could not reasonably conclude that Dr. Sood's treatment was "so blatantly inappropriate as to evidence intentional mistreatment," *Edwards*, 478 F.3d at 831 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Gallo has not presented evidence to rebut Dr. Sood's assessment that his lipomas pose no substantial risk and that surgery is not required.

Gallo also challenges the district court's dismissal at screening of his claim against John, the physician's assistant, on the basis that the court misapprehended the nature of his claim.[3] Gallo argues that the court minimized his claim as a disagreement with treatment when in fact he accused John of refusing to follow a specialist's prescribed course of treatment.

The district court properly characterized Gallo's allegations as a dispute about treatment. His allegations reflect that John did not ignore his condition: when he reported many bowel movements each day, she put him under observation for 23 hours and cancelled his Metamucil. And though Gallo tries to cast John's actions as a failure to follow a specialist's instructions, he later clarified that she did not discontinue a prescription for Asacol, but rather declined to re-prescribe it upon his request. None of these allegations, if true, would show a knowing disregard of a serious risk to his health. Also, we note that, from the record developed during discovery, Gallo acknowledged that his colitis remained under control until late October, undermining any allegation that John's inaction caused him unwarranted suffering.

---

[3] The defendants argue that Gallo waived this challenge by not mentioning John specifically in his notice of appeal or stating that he intended to appeal the screening order. But Federal Rule of Appellate Procedure 3(c)(A) requires that the notice of appeal specify only the party *taking* the appeal, and "a notice of appeal from a final judgment . . . is adequate to bring up everything that preceded it." *Weiss v. Cooley*, 230 F.3d 1027, 1031 (7th Cir. 2000). That John was never served makes no difference here because counsel for Dr. Sood and Pitcher Stokes has briefed her position with no apparent objection from her. *See id*. at 1031–32.

Finally, Gallo challenges the district court's denial of his request that counsel be recruited. At screening, the district court examined the two inquiries described in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc): "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" Gallo, the court concluded, satisfied the first inquiry but appeared competent to proceed on his own based on his experience with several other lawsuits—some of which also involved his ulcerative colitis—and his ability to articulate the history of his treatment at the facility. The district court here applied the correct legal standard and properly supported its assessment of Gallo's competence.

AFFIRMED.