Filed 6/23/16; pub. order 7/15/16 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRED DURAN, | D067917 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00048664-CU-BT-CTL) |
| OBESITY RESEARCH INSTITUTE, LLC et al., | |
| Defendants and Respondents; | |
| DEMARIE FERNANDEZ et al., | |
| Objectors and Appellants. | |

APPEAL from a judgment and order of the Superior Court of San Diego County, John S. Meyer, Judge. Judgment and order reversed.

Bursor & Fisher, Scott A. Bursor, L. Timothy Fisher, Annick M. Persinger and Neal J. Deckant for Objectors and Appellants.

Nicholas & Tomasevic, Alex Tomasevic and Craig M. Nicholas for Plaintiff and Respondent.

Newport Trial Group, Scott J. Ferrell, David W. Reid; Gordon & Rees and Richard P. Sybert for Defendant and Respondent Obesity Research Institute, LLC.

Shook, Hardy & Bacon, Frank C. Rothrock, D. Susan Wiens and Paul B. La Scala for Defendant and Respondent Wal-Mart Stores, Inc.

Fred Duran filed a putative class action complaint against Obesity Research Institute, LLC (ORI) and Wal-Mart Stores, Inc. (Wal-Mart) (collectively, defendants). Duran alleges defendants falsely claimed that ORI's products, Lipozene and MetaboUp, have weight loss benefits. The court approved a claims-made settlement providing that class members submitting a claim without proof of purchase would receive $15, and those submitting receipt(s) would receive one refund of double the unit price paid. The settlement also provided that ORI would cease making certain assertions in product advertising. Defendants also agreed to not oppose a motion seeking $100,000 in attorney fees to class counsel.

In a class estimated to consist of between 400,000 and 600,000 consumers, 895 claims were submitted, in the total amount of $31,800. Assuming there were 500,000 class members, less than two-tenths of 1 percent (0.179 percent) submitted claims. Thus, the proposed settlement buys a nationwide release for the price of about six cents ($0.064) per class member. And for achieving this result, class counsel receive $100,000 in attorney fees—about 75 percent of the total amount paid.

Objectors, class members DeMarie Fernandez, Alfonso Mendoza, and Brian Horowitz (collectively, objectors) appeal, contending the settlement is the product of collusion. Objectors assert the class did not receive sufficient notice of settlement, and

2

the settlement is unreasonable and inadequate. They also contend the attorney fee award is excessive.

As we explain, the downloadable online claim form, a part of the class notice of settlement, misrepresents three material terms of the settlement: (1) the amount of payment to class members is misstated; (2) the claim form refers to Hydroxycut products, which are not involved in this case; and (3) a Civil Code section 1542 release was included in the claim form, although at the preliminary approval hearing the court stated it would not approve such a release.

After we called these errors in the claim form to counsels' attention (no one raised this issue in the trial court) and requested supplemental briefing, class counsel and defendants candidly conceded, "[T]he class members were not clearly informed of what the terms of the settlement were, and what benefits they would receive and what claims they would release if they submitted a claim." Nevertheless, class counsel and defendants contend the trial court's determination that the settlement is fair and reasonable should be affirmed, and the case should be remanded only to decide the "details and logistics" of giving corrected class notice.

Remand cannot be limited to giving a corrected class notice. The judgment must be reversed because the class notice failed in its fundamental purpose—to apprise class members of the terms of the proposed settlement. The erroneous notice injected a fatal flaw into the entire settlement process and undermines the court's analysis of the settlement's fairness. (See *Petrone v. Veritas Software Corp.* (*In re Veritas Software Corp. Sec. Lit.*) (9th Cir. 2007) 496 F.3d 962, 972 (*Veritas*).)

3

Although reversal on this ground makes it unnecessary to consider other issues objectors raise, in the interests of judicial economy, we also discuss two issues that will likely arise on remand: (1) the manner of giving class notice of settlement, and (2) whether the trial court properly considered the injunctive relief portion of the settlement as "the most important part" in determining its reasonableness.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Duran's Putative Class Action Complaint*

In May 2013 Duran filed a putative class action complaint against ORI and Wal-Mart for alleged violations of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), False Advertising Law (Bus. & Prof. Code, § 17500 et seq.) and other state law claims. Duran filed the action on behalf of himself and "[a]ll persons, nationwide" who purchased ORI diet products for personal use "after August 10, 2012 until the date notice is disseminated."

Duran's complaint identifies ORI's products as Lipozene and MetaboUp. He alleged ORI "markets and sells" these products as a "'weight-loss breakthrough'" that is "'clinically proven to help you lose weight and pure body fat'" and represents these products "'can help you lose weight without a change in lifestyle.'" Duran alleged these representations were false and misleading and that "Lipozene is not, in fact, effective for weight control." He alleged that ORI's promises and representations that its diet products are "clinically proven and guaranteed weight loss miracle are false and have been used to unfairly deceive millions of consumers into buying" ORI's products. Duran alleged that

4

Wal-Mart "promotes and disseminates" ORI's "deceptive advertising claims by carrying and distributing the Lipozene and/or MetaboUp products."

B. *Motion for Class Certification*

In July 2013 Duran filed a motion for class certification, set for hearing in December 2013. In seeking class certification, class counsel stated, "Lipozene and MetaboUp are not, in fact, 'clinically proven' to be weight-loss miracle pills and Defendants have simply swindled consumers out of millions of dollars based on a uniform set of misrepresentations that make up a marketing story."

C. *The First Motion for Preliminary Approval*

In November 2013—before the class certification motion was heard—Duran and ORI jointly moved for preliminary approval of settlement. The settlement included certification of a settlement class defined as "all persons in the United States who purchased ORI's products during the Class Period for personal or household use . . . ."

The settlement provided that class members submitting a valid claim without proof of purchase would receive $15, and those submitting proof of purchase would receive double the unit price paid (between $28 and $68), limited to one such refund. The settlement agreement provides that claims will be paid from a "Non-Reversionary Fund."[1]

---

[1] A "claims-made" settlement, as here, is one that does not have a fixed settlement fund, but rather provides the defendant will pay claims of class members who file them. (Rubenstein, Newberg on Class Actions (5th ed. 2014) § 13:7, p. 287 (*Newberg*).) Such settlements may promise far more than they deliver because the claiming rate is notoriously low. (See *Sullivan v. DB Invs., Inc.* (3d Cir. 2011) 667 F.3d 273, 329, fn. 60

The settlement also provided that ORI will establish a "Reserved Fund" of $500,000 to pay the costs of administration, notice, incentive awards and attorney fees. This fund would be retained "internally" by ORI. Any reserved amounts not used to pay these expenses would "cease to be internally reserved by ORI" when the judgment is final.

At the time of this first motion for preliminary approval, the settlement agreement also included a waiver by class members of unknown claims and a waiver of their rights under Civil Code section 1542.[2]

Additionally, defendants agreed to not oppose a request by class counsel for up to $100,000 in attorney fees and costs. Class counsel would seek a $2,500 "incentive award" for Duran as class representative.

---

[claims rates in consumer class settlements "rarely" exceed 7 percent]; *Sylvester v. CIGNA Corp.* (D.Maine 2005) 369 F.Supp.2d 34, 52 [claims-made settlements regularly yield response rates of 10 percent or less].)

In contrast, in a "common fund" settlement, the defendant contributes a fixed settlement amount, which is then distributed to settlement class members directly or through a claims process. (*Newberg, supra,* § 13:7, pp. 287-288.) Depending on the terms of the settlement agreement, if the class does not claim the full amount, unclaimed funds may be distributed pro rata to the claimants, or instead may revert to the defendant, or be distributed to some other person or entity.

The claims-made settlement here is the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant. (See *Newberg, supra,* § 13:7, p. 288.) Accordingly, calling the fund a "Non-Reversionary" fund, as the parties do here, can make the settlement appear to be more beneficial to the class than it really is.

[2]    Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

6

The court declined to rule on the motion for preliminary approval, instead raising "several concerns regarding the proposed settlement." The court's concerns included: (1) "Is publication on the internet and in one newspaper sufficient?"; (2) "Counsel has not submitted a copy of the claim form"; (3) "[T]he court will not approve a [Civil Code] section 1542 waiver."

D. *The Second Motion for Preliminary Approval*

After revising the settlement agreement in an attempt to address the court's concerns, Duran and ORI filed a second motion for preliminary approval. Class counsel stated the settlement was the result of "arms-length settlement negotiations during a mediation" conducted by a retired superior court judge, Herbert B. Hoffman. Judge Hoffman submitted a declaration stating he "supervised the mediation between the parties in this case" and that "[a]fter many hours of negotiations, the parties were able to reach a resolution that [he] believe[s] is reasonable . . . ."

The monetary recovery for class members and structure of the settlement remained the same as the parties presented in the first motion for preliminary approval: Class members submitting a valid claim form with no proof of purchase would receive $15. Those submitting a valid claim form with proof(s) of purchase would receive one refund of double the unit price paid.

Claims forms could be obtained by calling a toll-free number established for that purpose, by requesting one by mail, or by downloading the form from a Web site established by the settlement administrator. Completed claim forms could be submitted

7

online or by mail.  The parties provided the court with an exemplar claim form, which correctly reflected the settlement payouts.

The parties proposed to give class notice of the settlement in three ways:  (1) publication in *USA Today*; (2) e-mail notice to class members "with known electronic mail addresses";[3] and (3) a settlement Web site.

As revised, the settlement agreement did *not* require claimants to waive rights under Civil Code section 1542.

E.  *Class Notice of Settlement*

The court granted this (second) motion for preliminary approval.  In August 2014 notice of settlement was published in a Monday edition of *USA Today*.  The published notice directed readers to a Web site, www.oriclassactionlawsuit.com, for additional information on submitting a claim. The settlement Web site contained downloadable versions of the notice of settlement, settlement agreement, and claim form.

ORI sent e-mail notice to 237,334 class members who purchased the products online directly from ORI.  The e-mail notice stated, "Lipozene has recently reached a nationwide settlement," and invited the e-mail recipient to click a link to the settlement Web site for more information.

---

3    Later, in the motion for final approval, it became clear that "with known electronic mail addresses" meant class members who purchased Lipozene only from ORI's Web site, and not those who purchased from Wal-Mart's online store.

8

F. *The Downloadable Claim Form*

Section V of the downloadable claim form is entitled "Proof of Purchase."  The

form states, "Do you still have the original Purchase Receipt(s) for the ORI Product(s)

identified above?"  Immediately below an area for a "yes" or a "no" answer, the following

instruction appears in uppercase:

> "IF YOU ANSWERED 'YES', YOU ARE ENTITLED TO A FULL
> REFUND OF ALL PRODUCTS PURCHASED DURING THE
> CLASS PERIOD IF YOU SEND IN YOUR PURCHASE
> RECEIPT(S).  IF YOU ANSWERED 'NO', YOU ARE ENTITLED
> TO A MAXIMUM REIMBURSEMENT OF $15.00."

Section VI of the downloadable claim form is entitled "Instructions For Making a

Claim."  The instructions state, "Make sure this form is filled out completely" and "Sign

and date the verification below (Section VII)."  The instructions also state:

> "You may submit a claim for full monetary payment for each
> *Hydroxycut* product you purchased and for which you have an
> original proof of purchase, up to no limit."  (Italics added).

Section VII of the downloadable claim form is entitled "Release and Sworn

Verification Statement."  It states in part:

> "I submit this Claim Form to participate in the settlement reached in
> this Lawsuit, and submit to the jurisdiction of the San Diego County
> Superior Court with respect to my claim asserted herein, and for
> purposes of enforcing the release of claims stated in this Claim
> Form . . . .  [¶] . . .  [¶] *I hereby relinquish any and all rights and
> benefits that we may have under California Civil Code § 1542 . . . .*"
> (Italics added.)

G. *Claims Submitted*

At the end of the claims-filing period, 895 claim forms were submitted, claiming a total of $31,800. The claims administrator received only two requests for exclusion from the settlement.

H. *Objections to Settlement*

Objectors are plaintiffs in a competing putative class action against ORI, which was filed on May 16, 2013, three days after Duran filed the instant case. The district court stayed that action to avoid "duplicat[ing] the San Diego superior court's effort [in *Duran*] and possibly issu[ing] a conflicting decision." (*Fernandez v. Obesity Research Institute, LLC* (E.D.Cal. Aug. 28, 2013, No. 2:13-cv-00975-MCE-KJN) 2013 U.S.Dist. Lexis 122986.)

Objectors filed a formal objection to class action settlement. They asserted the settlement was the result of collusion between class counsel and ORI and a reverse auction.[4] As evidence of the alleged collusion, objectors prepared a chart comparing allegations in Duran's complaint with a presuit CLRA letter objectors' lawyers sent to ORI in March 2013. Because class counsel could have obtained the objectors' CLRA letter only from ORI, objectors assert the "plagiarism in the Duran complaint . . . is a smoking gun of collusion between purported adversaries." Objectors also noted that class

---

4    By reverse auction, Objectors refer to a situation "when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the [trial court] will approve a weak settlement that will preclude other claims against the defendant.'" (*Negrete v. Allianz Life Ins. Co.* (9th Cir. 2008) 523 F.3d 1091, 1099.)

10

counsel had previously litigated a case against ORI, which settled for $90,000 in attorney fees and zero monetary relief to the class.[5]

Objectors argued the court should not approve the settlement because: (1) direct notice should have been given to online purchasers of ORI's products from Wal-Mart.com and other retailers, (2) the publication notice was inadequate because it had an estimated "reach" of only 1.06 percent of class members, (3) the settlement is substantively unfair and unreasonable, (4) the parties failed to provide evidence establishing the settlement is reasonable, (5) Duran lacks standing to settle claims involving MetaboUp because he did not purchase that product, and (6) the attorney fees are excessive.

I. *Motion for Final Approval*

In January 2015 Class counsel and ORI's attorneys filed a joint motion for final approval. The motion was supported, in part, by a declaration from Dan Reeves, vice president of Innotrac Corporation, the claims administrator. Reeves's declaration authenticated and attached a "[t]rue and correct cop[y]" of the downloadable claim form on the settlement Web site. This is the claim form, discussed *ante*, that misstates several

---

[5] Class counsel and ORI deny there was any collusion. Class counsel contend objectors plagiarized *their* complaint in a case that settled against ORI in 2011. Moreover, ORI asserts it tried to settle this lawsuit with objectors' counsel, but negotiations ended when objectors' lawyer demanded $750,000 in attorney fees for doing essentially nothing to benefit the class. The lawyers on both sides accuse each other of greed and disregarding the class interests. To resolve this appeal, we need not and do not resolve these accusations.

terms of the settlement. However, neither the parties nor objectors raised this issue in the trial court.

Objectors opposed the motion for final approval, making the same arguments as asserted in their objections to the proposed settlement.

At the hearing, the court expressed "concern" about "the notice," as indicated by the low response rate. Stating, "I am not particularly happy with it," the court nevertheless approved the settlement. On March 24, 2015, the court entered a final approval order stating, "This Court hereby approves the Settlement set forth in this Judgment . . . ." On April 10, 2015, the court entered a separate order awarding class counsel $100,000 in attorney fees and awarding Duran, as class representative, $2,500 as an incentive fee. Objectors timely appealed.

DISCUSSION

I. THE JUDGMENT MUST BE REVERSED BECAUSE THE ONLINE CLAIM
FORM MISSTATED MATERIAL SETTLEMENT TERMS

"'The principal purpose of notice to the class is the protection of the integrity of the class action process . . . ." (*Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 745.) "The notice '"must fairly apprise the class members of the terms of the proposed compromise and of the options open to the dissenting class members."'" (*Id.* at p. 746.) A class action settlement notice should present information neutrally, simply, and understandably. The notice should allow class members to evaluate a proposed settlement. Notice should describe the formula or plan for computing individual settlement class member recoveries. (See *Cellphone Fee Termination Cases*

12

(2010) 186 Cal.App.4th 1380, 1393 ["'The aggregate amount available to all claimants was specified and the formula for determining one's recovery was given. Nothing more specific is needed.'"].)

The notice given here was substantially dependent upon information conveyed to class members through the settlement Web site. For example, e-mail notice, sent to 237,334 class members, did not itself contain the settlement's terms, but instead instructed recipients to click on a link to the settlement Web site to obtain the long form notice and settlement agreement. The notice published in *USA Today* explained the method of calculating settlement payments and generally described the injunctive relief, but also referred readers to the settlement Web site "[f]or additional information on submitting a claim . . . ." The settlement Web site states that submitting a valid claim form is the only way to get a cash payment and contains a link to a downloadable claim form. Thus, the downloadable claim form is an integrated part of the settlement notice given to class members and submitting a valid claim form was essential to receiving settlement money.

The parties and objectors now agree that the downloadable claim form is inconsistent with material settlement terms approved by the court. First and foremost, there is a discrepancy in the settlement amount. The downloadable claim form states class members submitting receipts would receive "a full refund of all products purchased during the class period." However, under the settlement agreement, class members submitting receipts would receive one refund of double the purchase price.

This discrepancy could overvalue or undervalue a claim, depending on the number of purchases and price paid by the claimant. For example, a class member who made six purchases at $30 each would be entitled to $180 as provided in the downloadable claim form, but only $60 under the settlement agreement. Conversely, a class member who made one purchase for $20 would receive $20 under the payout formula in the claim form, but $40 under the settlement agreement.

Second, the downloadable claim form states class members would also receive a "full monetary payment for each Hydroxycut product you purchased and for which you have an original proof of purchase, up to no limit." This is also inconsistent with the court-approved settlement agreement. The settlement class consists of persons who purchased Lipozene, MetaboUp, and MetaboUp Plus during the class period for personal or household use, with some limited exceptions. Duran's lawsuit does not involve the distinct product, Hydroxycut.

Third, the downloadable claim form contains a waiver of rights under Civil Code section 1542. This apparently is a remnant from an early (November 2013) draft of the settlement agreement, which at that time included such a waiver. However, at the December 2013 hearing on the first motion for preliminary approval, the court stated it would not approve a Civil Code section 1542 waiver. Subsequently, the parties revised the settlement agreement to delete that waiver. Apparently, the downloadable claim form was not revised accordingly.

Although neither objectors nor the parties raised this issue in the trial court, prior to oral argument we notified objectors and the parties that the downloadable claim form

14

appeared to be inconsistent with the settlement and final approval order, and we asked them to submit additional briefing on the point. We have received and considered their letter briefs.

Class counsel and defendants contend that because objectors did not challenge the contents of the claim form in the trial court or in their appellate briefs, the discrepancies between the claim form and the settlement terms are waived or forfeited, and should not be addressed in this appeal.

Class counsel and defendants are correct that, in general, an appellate court will not review an issue that was not raised by some proper method in the trial court. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519.) However, "[i]t is important to remember . . . that the purpose of this general rule is to give the trial court and parties an opportunity to correct an error that *could* be corrected by some means short of an opposite outcome in the trial court." (*Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 712.)

As an exception to the general rule, the appellate court has discretion to consider issues raised for the first time on appeal where the relevant facts are undisputed and could not have been altered by the presentation of additional evidence. (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341, fn. 6.) "It makes no difference that the issue was first raised on appeal by the court rather than the parties, as long as the parties have been given a reasonable opportunity to address it"—which they have, in their supplemental briefs. (*Ibid.*)

15

The issue involving the inconsistencies between the online claim form and the settlement terms agreed to by the parties (and approved by the court) may be considered on appeal because it involves applying law to undisputed facts. The operative facts—the terms of the court-approved settlement and the content of the online claim form—are undisputed and are fixed. There is nothing the parties could have done in the trial court to alter or vary these facts.

This is also an error the trial court could not have cured, even if the issue had been raised at the final approval hearing. The claims process was over. If objectors had raised this issue below, the trial court could have responded only by requiring class notice of settlement to be redone correctly, and by deferring any ruling on the settlement's fairness until after notice was given again and the claims process was completed. (*Veritas*, *supra*, 496 F.3d at p. 968 ["the adequacy of the notice is antecedent to the merits of the settlement"].)[6]

Moreover, appellate courts are most likely to consider an issue involving undisputed facts for the first time on appeal where the issue involves important questions of public policy or public concern. (Eisenberg el al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:239, p. 8-170.) In the context of a class action

---

[6]    The parties have not cited any factually similar California case; that is, a case where class notice of settlement materially misrepresents the court-approved settlement payout. Where there is no relevant California precedent on point, """California courts may look to federal authority for guidance on matters involving class action procedures.""" (*Cellphone Fee Termination Cases*, *supra,* 186 Cal.App.4th at p. 1392, fn. 18.)

settlement, "'"The [trial] court has a fiduciary responsibility as guardians of the rights of the absentee class members when deciding whether to approve a settlement agreement."'" (*Luckey v. Superior Court* (2014) 228 Cal.App.4th 81, 95.)  "This reflects concerns that the absent class members, whose rights may not have been considered by the negotiating parties, be adequately protected against fraud and collusion."  (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 240 (*Wershba*).)  The court's responsibility to protect absent class members further warrants our consideration of this issue.

Turning to the merits, class counsel and defendants concede the notice was defective and "defendants need to provide the class members with notice of the actual settlement terms and a proper claim form  . . . and the class members need to be provided with another opportunity to submit a claim . . . ."  However, class counsel and defendants argue the court's ruling that the settlement is reasonable, fair and adequate should not be reversed.  They argue, "[t]he fact that the claim form that was published on the web site does not reflect the terms of the settlement is not relevant to the issue of whether those terms were fair and reasonable in the first place."

We disagree because the adequacy of class notice of settlement is intertwined with the court's assessment of the reasonableness of the settlement.  In assessing whether a settlement is fair, reasonable, and adequate, the court should consider, among other things, "the amount offered in settlement" and "the reaction of the class members to the proposed settlement."  (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801.)

Given the defective notice previously given and the claims-made nature of this settlement, it is impossible to know *now* what "the amount offered in settlement" will be

17

after proper notice is given.  It is also impossible to determine "the reaction of the class members to the proposed settlement"—i.e., whether class members will participate in the settlement, object, or opt out—before proper notice is even given.

Accordingly, the material inconsistencies between the downloadable claim form and the approved settlement undermines the court's analysis of the fairness of the settlement and requires the judgment to be reversed.  (*Veritas, supra,* 496 F.3d at pp. 971-972 [vacating judgment approving class settlement where notice to the class was misleading].)

For the benefit of the parties on remand, we now address other issues likely to arise on remand.

II.  DIRECT NOTICE, PUBLICATION NOTICE, AND INJUNCTIVE RELIEF

A.  *Notice Issues*

To satisfy due process, notice to class members must be "'the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."'" (*Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 399, fn. 9.)  In determining how to disseminate class notice of settlement—whether by direct mail, e-mail, publication, or something else—the standard "is whether the notice has 'a reasonable chance of reaching a substantial percentage of the class members.'" (*Wershba*, *supra*, 91 Cal.App.4th at p. 251.)  The trial court has "'virtually complete discretion'" in determining how that can most practicably be accomplished.  (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85

18

Cal.App.4th 1135, 1164.) However, "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Mullane v. Cent. Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 315.)

ORI sent notice by e-mail to 237,334 of its customers who purchased Lipozene products from ORI's Web site. However, by ORI's own estimate, there are somewhere between another 162,666 to 362,666 class members.[7] The parties chose to notify these class members by publishing notice of the settlement in *USA Today* and by establishing a settlement Web site.

Objectors presented evidence showing that online purchasers of Lipozene from Wal-Mart.com must provide a mailing address. Objectors contend direct notice should have been sent to such class members. Objectors also contend the parties should have subpoenaed records from other retailers, such as Amazon, CVS, and Walgreens, to obtain addresses of class members who purchased ORI's products from those stores.

However, Wal-Mart contends it cannot obtain consumer addresses for those who purchased from its online store because the entity operating Wal-Mart.com—Wal-Mart.com USA, LLC—is not the entity Duran sued, which is Wal-Mart Stores, Inc.

Moreover, ORI's attorney filed a declaration stating he "reached out" to "several retailers" to obtain customer contact information, but was told that "obtaining such information is illegal, unavailable or improper."

---

7     ORI estimated the class was between 400,000 to 600,000 members.

19

On remand, class counsel and defendants will have to provide a better foundation to support a ruling that direct notice need not be given.  Regarding class members who purchased online from Wal-Mart, there is no evidence that anyone associated with Wal-Mart Stores, Inc., a defendant in this case, even tried to obtain class members' mailing or e-mail addresses from Wal-Mart.com USA, LLC.  The fact that the brick and mortar store is owned by one entity, and the online Wal-Mart store by another, does not by itself establish the requested information is not reasonably obtainable.

Moreover, assertions that direct notice should not be ordered because the cost is unreasonable under the circumstances should be supported by declaration based on personal knowledge, not unsworn statements of counsel.[8]  The standard is a notice plan that one would implement if one genuinely wanted to inform someone, all relevant factors considered.[9]

---

[8]  At the hearing, one of ORI's lawyers told the court the cost of direct mail is about one dollar per class member.  There was no other evidence on cost.

[9]  Guidance in selecting the appropriate manner of giving notice is provided by California Rules of Court, rule 3.766, which provides in part:

> "(e) **Manner of giving notice**  In determining the manner of the notice, the court must consider:  [¶] (1) The interests of the class; [¶] (2) The type of relief requested; [¶] (3) The stake of the individual class members; [¶] (4) The cost of notifying class members; [¶] (5) The resources of the parties; [¶] (6) The possible prejudice to class members who do not receive notice; and [¶] (7) The res judicata effect on class members.

> "(f) **Court may order means of notice**  [¶] If personal notification is unreasonably expensive or the stake of individual class members is insubstantial, or if it appears that all members of the class cannot

20

The record made to support not giving direct notice to class members who purchased from Amazon, CVS, Walgreens is also very thin.  ORI's counsel filed a declaration stating he "reached out to several retailers" who told him "obtaining such information is illegal, unavailable, or improper."  The court could only guess what "reached out to several retailers" really means and what retailers counsel contacted.

We are not suggesting that direct notice *must* be given to class members who only purchased ORI products on Walmart.com, or to class members who purchased the subject products from retailers other than ORI.  However, to properly exercise its discretion, the court must be provided evidence addressing factors stated in California Rules of Court, rule 3.766.

B.  *Publication Notice in USA Today*

The parties published notice of class settlement in a *USA Today*.  According to class counsel, *USA Today* was selected because it is "the number one newspaper in daily circulation in the United States, with a daily weekday circulation of nearly 3.3 million."

Objectors contend this is an insufficient basis upon which the trial court could properly conclude the notice had "'a reasonable chance of reaching a substantial percentage of the class members.'"  (*Wershba*, *supra,* 91 Cal.App.4th at p. 251.)  As explained *post*, on this record, we agree with Objectors.

---

be notified personally, the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action—for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group."

21

Objectors submitted a declaration from a media expert, Mary Tyrrell, asserting the *USA Today* notice reached only approximately 1.06 percent of class members. In reaching her conclusion, Tyrrell used "industry-standard research data" of "demographic, lifestyle, product usage and exposure" that is "widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the U.S." She calculated the reach of the *USA Today* notice by using data for audiences targeted with a definition of "Meal/Dietary/Weight Loss Supplements Used For Weight Loss in Last 6 Months."

The parties offered no evidence disputing Tyrell's opinion or its foundation. There was also no evidence Lipozene products are even advertised in *USA Today*. Nor was there evidence the parties made any effort to demographically target print notice to an audience interested in diet, weight loss supplements, or anything else. From what the record shows, the parties chose to print notice in *USA Today* because approximately three million people nationwide will read it. However, in light of Tyrell's declaration, about 99 percent of the settlement class members will never even glance at *USA Today*.

On appeal, ORI contends Tyrell's opinion is flawed because it fails to consider the reach of e-mail notice to 237,334 class members who purchased from ORI's Web site, and the reach of the settlement Web site. This argument misses the target entirely. Publication notice is not directed at those who received direct e-mail notice. Rather, publication notice is for the estimated 162,666 to 362,666 class members who were *not* sent e-mail notice. Moreover, providing settlement notice on a Web site is not helpful unless settlement class members are informed to go to the Web site. ORI does not

22

explain how a potential settlement class member who did not receive e-mail notice and who did not read the notice in *USA Today* would even know to look for a Lipozene settlement Web site.

According to Tyrell's undisputed and unopposed declaration, *USA Today* is ill-suited, demographically, to reach the class members here. Yet, the parties concede that class members are supposed to receive the best notice practicable under the circumstances. In the context of publication notice here, this requires a reasonable effort to select publication(s) that class members are likely to read. For example, in *Wershba, supra*, 91 Cal.App.4th at page 251, a class action involving support for Apple computers, notice was published not only in *USA Today*, but also in *MacWorld*.

In many cases, courts have approved publication notice based on evidence that the publications chosen target class members—evidence that is completely lacking in this case. (See, e.g., *Gallucci v. Gonzales* (9th Cir. 2015) 603 Fed.Appx. 533, 535-536 [upholding publication notice based on "reliable expert testimony" that notice was "specifically tailored to reach [defendant's] customer base"]; *In re Motorsports Merchandise Antitrust Lit.* (N.D.Ga. 2000) 112 F.Supp.2d 1329, 1332 [noting an expert "designed a profile of class-member demographics and media consumption habits so that dissemination of the Summary Notice would target the largest number of class members"]; *Carlough v. Amchem Products, Inc.* (E.D.Pa. 1993) 158 F.R.D. 314, 321-322 ["Before deciding where to advertise, the settling parties determined that, based on various factors, the primary target group for the notice plan would likely be males age 45 or older. Thus the paid advertising plan is weighted towards this group."]; *In re Domestic*

23

*Air Transp. Antitrust Litigation* (N.D.Ga. 1992) 141 F.R.D. 534, 551 ["the publication program . . . is geographically broad and designed to reach the maximum number of class members"].)

There was simply no evidence presented to the trial court here to support its implied determination that publishing settlement notice in *USA Today* had a "reasonable chance of reaching a substantial percentage of the class members . . . ." (*Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 974.)

C. *Injunctive Relief*

In addition to providing money, the settlement also requires ORI to change its advertising and some other business practices. The advertising and packaging changes are as follows:

| Existing Advertising | Under the Settlement, Is Changed To. . . . |
|---|---|
| "What's even more amazing is that participants were not asked to change their lifestyle. Just take Lipozene." | "'What's even more amazing is that *study* participants were not asked to change their lifestyle. Just take Lipozene." (Italics added.) |
| "Lipozene has effectively helped millions of people meet their weight loss goals, and it can help you too!" | "Lipozene has effectively helped *countless* people meet their weight loss goals, and it can help you too!" (Italics added.) |
| "Lipozene has helped millions of people successfully meet their weight loss goals and lose pure body fat" | "Lipozene has helped *countless* people successfully meet their weight loss goals and lose pure body fat." (Italics added.) |

Additionally, ORI agreed to add a disclaimer regarding Lipozene's effectiveness, including links to studies about Glucomannan, an ingredient contained in Lipozene. A statement would also be added stating, "For best results, use in conjunction with reasonable diet and exercise." ORI also agreed to terminate its "Pay-Per-Click" Internet

24

advertising, increase its return policy from 30 to 45 days to claim refund, and use "best efforts" to "eliminate all testimonials created prior to January 1, 2010."

In approving this settlement, the court remarked at the hearing, "The injunctive relief has already been done and that's the most important part of this. The money is, frankly, not." Objectors contend the injunctive relief is illusory and should not have been a factor in determining the settlement's reasonableness. As the record now exists, we agree with objectors on this point.

We fail to see any material difference by adding the word "study" before "participants." Similarly, there is no material difference between stating Lipozene has "effectively helped millions of people" and stating Lipozene has "effectively helped countless people." ORI also agreed to extend its money-back refund from 30 to 45 days. But there is no evidence the extra 15 days offers any material benefit to consumers.

As noted, as part of the injunctive relief, ORI is required to state in its advertising, "For best results, use in conjunction with reasonable diet and exercise." In its brief, ORI states this is the most significant aspect of injunctive relief afforded consumers under the settlement. However, according to class counsel, ORI was *already* prohibited from making misrepresentations about Lipozene and its relationship to diet and exercise. In Duran's motion for class certification, class counsel told the court that in June 2005, ORI entered into a stipulated judgment with the Federal Trade Commission that prohibits ORI from representing that Lipozene or MetaboUp products "[c]auses rapid or substantial weight loss without the need to reduce caloric intake or increase physical activity." Thus,

25

at least in this respect, the injunctive relief simply requires ORI to obey an existing judgment. As such, it is difficult to conceive how this injunctive relief adds value.

## III. THE POSTJUDGMENT AWARD OF ATTORNEY FEES AND AWARD TO THE CLASS REPRESENTATIVE IS REVERSED

After entering judgment granting final approval of the settlement, the court entered a separate order awarding class counsel $100,000 in attorney fees and $2,500 to Duran as an incentive payment as class representative. Because the judgment granting final approval of the settlement is reversed, the related order awarding attorney fees and $2,500 incentive to Duran is also reversed.

## IV. THE REQUEST FOR JUDICIAL NOTICE IS DENIED

Objectors request this Court take judicial notice of: (1) a complaint filed on December 7, 2015, in the Central District of California court against the law firm representing ORI in the trial court, entitled *Natural Immunogenics Corp. v. Newport Trial Group* (No. 8:15-cv-02034); and (2) a complaint the law firm of Nicholas & Tomasevic, LLP filed on December 31, 2015, in the Superior Court of San Diego County on behalf of Joshua A. Weiss against ORI and others (No. 37-2015-00043385-CU-OE-CTL). Objectors contend each of these lawsuits supports their assertion that the proposed settlement is the product of "collusion between the parties."

The request for judicial notice is denied. The requested matters are not relevant to the disposition of any issue on appeal. (See fn. 5, *ante*.)

26

## DISPOSITION

The judgment is reversed. The order awarding attorney fees and an incentive payment to Duran is reversed. The request for judicial notice is denied. Objectors DeMarie Fernandez, Alfonso Mendoza, and Brian Horowitz shall recover costs on appeal.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

Filed 7/15/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FRED DURAN, | D067917 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00048664-CU-BT-CTL) |
| OBESITY RESEARCH INSTITUTE, LLC et al., | |
| Defendants and Respondents; | ORDER GRANTING PUBLICATION |
| DEMARIE FERNANDEZ et al., | |
| Objectors and Appellants. | |

THE COURT:

The opinion in this case filed June 23, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c) and

28

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties